1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON, TACOMA DIVISION**

9
10
11
12
13
14
15
16
17
18
19

| | |
|---|---|
| **Corey Fortman,** | **Case No.:** |
| Plaintiff, | **COMPLAINT FOR VIOLATIONS OF:** |
| v. | **I. THE CREDIT REPAIR ORGANIZATIONS ACT, 15 U.S.C.  §§ 1679, ET SEQ.;** |
| **Debt Assistance Network, LLC,** | **II. WASHINGTON CONSUMER PROTECTION ACT RCW 19.86** |
| Defendant. | **III. BREACH OF CONTRACT** |
| | **IV. NEGLIGENCE** |
| | **V. INTENTIONAL MISREPRESENTATION** |
| | **VI. NEGLIGENT MISREPRESENTATION** |
| | **JURY TRIAL DEMANDED** |

20
21

**INTRODUCTION**

22  1.  Plaintiff Corey Fortman ("Plaintiff"), a consumer who purchased debt
23      consolidation and credit repair services from Defendant DEBT ASSISTANCE
24      NETWORK, LLC ("Defendant" or "DAN"), by and through Plaintiff'
25      attorneys, bring this action to challenge Defendant's unlawful conduct and
26      unfair business practices as a credit repair organization offering credit repair
27      services, which conduct caused Plaintiff' damages.
28  2.  Defendant charges consumers fees and represents that it provides debt relief,

**COMPLAINT**                                    1

debt negotiation, and debt management services to Plaintiff and similar consumers to eliminate or reduce their debts and, either expressly or impliedly, ultimately improve their credit scores, credit reports, or credit worthiness. Defendant preys on consumers like Plaintiff who find themselves deeply in debt or with poor credit, and are therefore especially susceptible to Defendant's illegal and deceptive practices.

3. In enacting the Credit Repair Organizations Act, 15 U.S.C. §§ 1679, *et seq.* ("CROA"), Congress declared that "[c]ertain advertising and business practices of some companies engaged in the business of credit repair services have worked a financial hardship upon consumers, particularly those of limited economic means and who are inexperienced in credit matters." 15 U.S.C. § 1679(a)(2).

4. The purposes of the CROA is (1) to ensure that prospective buyers of the services of credit repair organizations are provided with the information necessary to make an informed decision regarding the purchase of such services; and (2) to protect the public from unfair or deceptive advertising and business practices by credit repair organizations. 15 U.S.C. § 1679(b)(1); 15 U.S.C. § 1679(b)(2).

5. CROA prohibits a variety of false and misleading statements, and fraud, by credit repair organizations ("CROs"). CROs may not receive payment before any promised service is "fully performed." Services must be under written contract, which must include detailed descriptions of services and contract performance time. CROs must provide consumers with separate written disclosure statements describing the consumer's rights before entering into the contract. Consumers can sue to recover the greater of the amount paid or actual damages, punitive damages, costs, and attorney's fees for violations.

6. Plaintiff allege that Defendant operates an elaborate scheme to defraud debtors that preys on consumers who are drowning in credit card and

unsecured debt. Defendant targets consumers like Plaintiff, specifically those with larger debts, who are unable to make minimum payments or who will soon be unable to make such payments or who have a less than ideal credit history and/or score.

7.   Defendant fraudulently claims to act as a credit repair and debt relief company that offers debt settlement and credit repair services in an attempt to avoid strict consumer protection regulations enacted to protect vulnerable and unknowing consumer debtors.

8.   Plaintiff allege that Defendant violated: (i) the Credit Repair Organizations Act ("CROA"), 15 U.S.C. §§ 1679, *et seq*.; (ii) the Washington Consumer Protection Act, RCW 19.86; and is also liable for (iii) breach of contract; (iv) negligence; (v) intentional misrepresentation; and (vi) negligent misrepresentation.

9.   Plaintiff make these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

10.  While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

### JURISDICTION AND VENUE

11.  This Court has federal question jurisdiction over Plaintiff' claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. §§ 1679, *et seq*. as this action arises from violations of federal law; and this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for Plaintiff's Washington state law and common law claims.

12.  Because Defendant conducts business within the State of Washington, personal jurisdiction is established.

13.  Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff resides in the County of Thurston, State of Washington which is

within this judicial district; (ii) the conduct complained of herein occurred within this judicial district; (iii) the agreement entered into between Defendant and Plaintiff was executed in this county; and (iv) Defendant conducts business within this judicial district.

**PARTIES**

14. Plaintiff is a natural person who resides in the County of Thurston, State of Washington, who contracted with Defendant based on Defendant's representation that it would sell, provide, or perform a service for the purpose of advising or assisting Plaintiff with their debt and to improve Plaintiff's consumer credit record, history, or rating.

15. Defendant is a "credit repair organization" as defined by 15 U.S.C. § 1679a(3)(A) providing "credit repair services" as defined by 15 U.S.C. § 1679b.

16. Defendant is a Nevada limited liability company organized and existing under the laws of the State of Nevada with its principal place of business in Las Vegas, Nevada.

**FACTUAL ALLEGATIONS**

17. Sometime prior to April 7, 2016, Plaintiff is alleged to incurred certain financial obligations to several original creditors that were money, property, or their equivalent, which are due or owing, or alleged to be due or owing, from a natural person to another person and were therefore debts.

18. Plaintiff learned of Debt Assistance Network ("DAN") through a company called Credit Resources of Washington, which worked with DAN.

19. DAN advertised and offered debt consolidation, debt settlement, debt relief, and improved credit through the DAN Program.

20. On or about April 7, 2016, Plaintiff entered into a contract with Defendant entitled "Consumer Tender Of Offer and Debt Assumption Agreement" to receive Defendant's assistance with debt settlement and to improve Plaintiff'

consumer credit record, history, or rating with credit reporting agencies.

21. Defendant advertises and holds itself out as being in the business of providing debt settlement, debt relief, debt resolution, credit repair, and credit restoration services to consumers.

22. Specifically, the first page of DAN's contract with Plaintiff states:

> "In searching for a solution to my debt problems, I am seeking the assistance of DAN in minimizing the damage that might have or will result from my present situation.
>
> The purpose of this agreement is to employ the use of DAN's expertise in assisting me to accomplish the following consumer benefits:
>
> **My open accounts with original creditors:**
>
> To convince my creditors to agree to amend my existing agreements with new terms and conditions, e.g. 0% interest, no late fees, no over limit charges or reporting adverse account information to credit reporting agencies, and other more favorable terms."

23. Under the "Services provided to [Plaintiff] by DAN," DAN contractually agreed to make payments on the accounts enrolled with DAN.

24. In addition, under the "Services provided to [Plaintiff] by DAN," DAN contractually agreed to provide the client with a local attorney for representation and defense if a client was sued regarding an alleged debt.

25. Pursuant to DAN's contract, and to facilitate DAN's services to Plaintiff, Plaintiff provided DAN with a list of debt and account information for accounts which Plaintiff had balances on and Plaintiff had been making payments on prior to the agreement with DAN.

26. At the time Plaintiff entered into the contract with DAN, Plaintiff was not in

default on the accounts enrolled with DAN and the accounts had not been charged off by Plaintiff's creditors. Collectively, Plaintiff had a total alleged debt of $21,798 related to the accounts enrolled with DAN.

27. DAN required Plaintiff to pay an initial account set up fee of $250 plus $100 per account enrolled with DAN.   In addition, DAN required a "debt Assumption fee" of $8,719.20 plus an "account maintenance fee" of $59.95 per month.

28. Pursuant to Defendant's contract, Plaintiff was required to pay DAN a "down payment" of $450.00 followed by monthly payments of $360.65 for 36 months beginning April 26, 2016 until August 26, 2018; and further monthly payments of $59.99 for the subsequent 5 months from September 2018 until March 2019.

29. Defendant required Plaintiff provide DAN with limited Power of Attorney to provide its services with regard to Plaintiff' accounts. DAN further required Plaintiff to forward mail all further statements and communications from creditors regarding enrolled accounts to DAN's address, "including collection letters, attorney letters, summons etc." and asked that Plaintiff not discuss their financial situation or resolution of the accounts with creditors or collectors "in order not to confuse or interfere with the process of communications via mail being used by DAN." The contract also required that Plaintiff agree not to close any of the credit accounts listed on the List of Debts or in the resolution process with DAN.

30. Once Plaintiff entered into the contract with Defendant, Plaintiff did not receive any further communication from its creditors as Defendant had diverted all communications from Plaintiff's creditors and directed Plaintiff not to discuss their accounts with creditors or collectors, allowing Defendant to control any and all information Plaintiff received from thereon from Plaintiff's creditors regarding the accounts enrolled in Defendant's program.

31. Defendant's contract provides a "100% Guarantee Policy" which ensured that Plaintiff would be provided a 100% refund for an account "in the very unlikely event a new agreement is not accepted by a qualified original creditor within 90 days of enrollment."

32. Defendant maintained an online portal through which Plaintiff could access information regarding the status of each of its accounts placed with DAN. Plaintiff checked his two accounts through the online portal and as of September 21, 2016, each of the accounts were noted with "new terms have been accepted."

33. Based on DAN's representations to Plaintiff and relying on the contract and no conflicting notices or information from DAN, Plaintiff made the monthly payments as agreed to DAN. Based on the representations made by DAN, Plaintiff believed that the money paid to DAN was subsequently being paid to Plaintiff' creditors and relied on DAN to make the monthly payments to Plaintiff' creditors pursuant to the "new terms" which were purportedly accepted by the creditors.

34. Through the online portal created by Defendant and offered to Plaintiff, on or about September 21, 2016, Defendant represented to Plaintiff that "New terms have been accepted" on all accounts Plaintiff had enrolled with Defendant.

35. Defendant's representation to Plaintiff that "new terms had been accepted" by Plaintiff' creditors was false and intentionally made to conceal the true facts as known by Defendant, misleading Plaintiff to believe that Plaintiff's creditors had accepted "new terms" and Defendant was performing its services as promised. Defendant knowingly made these false representations which were reasonably calculated to deceive Plaintiff for the purpose of continuing to collect money from Plaintiff for its "services."

36. These representations by Defendant did in fact deceive Plaintiff, as Plaintiff had relied on Defendant representations that "new terms have been accepted"

by Plaintiff's creditors and Plaintiff continued making the scheduled payments to Defendant for its "services," believing that Defendant was in communication with Plaintiff's creditors and Defendant was making the required payments to Plaintiff's creditors as Defendant had promised and contractually agreed to do.

37. Defendant's false and misleading representations deceived Plaintiff into believing there was no reason to be concerned about taking any independent action with respect to their creditors, as Plaintiff relied on the "services" promised and agreed to in DAN's contract. As a result of Defendant's control and diversion of communications from Plaintiff's creditors, and Defendant's continued false and misleading representations regarding Plaintiff's accounts and Defendant's "services," Plaintiff was misled and deceived by Defendant and had no way to know they were in default on any accounts enrolled with DAN until Plaintiff began receiving communications from debt collectors and collections attorneys related to the accounts.

38. On July 6, 2018, Plaintiff received a letter from the law firm Nelson & Kennard regarding an alleged debt related to a Bank of America account enrolled with DAN.  Pursuant to DAN's instructions, and the contract, Plaintiff forwarded this letter to DAN.  Plaintiff's online portal with DAN confirmed that DAN was in receipt of the letter and assured that Plaintiff's cooperation with forwarding such correspondence to DAN would "aid [DAN] in providing maximum protection." Based on this and DAN's other representations to Plaintiff, Plaintiff believed that DAN would handle any response to the letter and any further communications required regarding the account.

39. **Thereafter, in or around August 2018, Plaintiff was served with a summons and complaint related to a collections action filed by Bank of America in the Thurston County District Court, in the State of**

**Washington against Plaintiff seeking to collect upon an alleged debt owed on the Bank of America account which was enrolled with DAN.**

40. Pursuant to DAN's explicit instructions, and the contract, Plaintiff immediately forwarded the summons and complaint to DAN. Plaintiff's online portal with DAN confirmed that DAN was in receipt of the documents. Based on DAN's representations to Plaintiff, Plaintiff relied upon the representation and the parties' contractual agreement that DAN would provide legal representation to defend him in this lawsuit and believed that DAN had provided him with legal representation pursuant to the contract DAN presented to Plaintiff.

41. Plaintiff called and emailed DAN numerous times to inquire regarding the status of the lawsuit. Plaintiff also sent the Bank of America Lawsuit to DAN.

42. Plaintiff finally heard back initially from DAN after about two weeks of constant calls and emails by Plaintiff to DAN.

43. DAN responded to Plaintiff and indicated that Plaintiff needed to file his own response to the Bank of America Complaint.

44. Plaintiff filed a pro per answer to the Bank of America Complaint.

45. After approximately four months of litigating the case pro per, DAN finally hired an attorney to represent Plaintiff in the Bank of America lawsuit in or around November 2018.

46. However, once DAN hired Plaintiff an attorney, Plaintiff's attorney informed Plaintiff that DAN was not providing the necessary documents to defend the lawsuit to Plaintiff's attorney.

47. Despite, DAN's failure to provide the necessary documents to Plaintiff's attorney, Plaintiff's attorney was eventually able to work out a settlement between Plaintiff and Bank of America.

48. Based on Plaintiff's emails and conversations with DAN, Plaintiff was worried that if Plaintiff stopped using DAN's service that DAN would no

longer pay for Plaintiff's representation.

49. DAN breached the contract with Plaintiff by failing to provide Plaintiff with legal representation for four months in the Bank of America lawsuit.

50. Plaintiff is informed and believes that DAN breached the contract by failing to make payments as promised by Defendant pursuant to the parties' agreement on the two accounts Plaintiff had enrolled with DAN.

51. Plaintiff is informed an believes that DAN breached the contract by failing to reach new agreements with new terms with Plaintiff's creditors, despite Defendant's express representation that "new terms [had] been accepted" by Plaintiff's creditors.

52. Plaintiff relied upon DAN's representation that "new terms" were accepted by each of Plaintiff's creditors for the accounts enrolled with DAN; and were misled by DAN's fraudulent representation that DAN had entered into new contracts with Plaintiff's creditors.

53. Ultimately, in or around March 19, 2019, Plaintiff ceased making further payments to DAN. Prior to stopping payments to DAN, Plaintiff had made over $11,000 in payments to DAN for its debt consolidation, debt resolution, and credit repair services.

54. Thereafter, Plaintiff reached out to DAN several times, including via email to "Lee", and requested a refund as Plaintiff were dissatisfied with DAN's "services" and alarmed to learn that Plaintiff was now in default on Plaintiff's accounts entrusted to DAN, and Plaintiff had been sued by at least one creditor as a result of DAN's conduct.

55. In addition to the above breaches of the contract, DAN breached the contract with Plaintiff by failing to refund payments Plaintiff provided to DAN when DAN knew or should have known that no new terms had been accepted by Plaintiff's creditors and/or no new contracts had been entered into with the creditors of Plaintiff's accounts enrolled with DAN.

56. Through this conduct Defendant has caused Plaintiff damages including but not limited to, loss of money, increased debt, damage to Plaintiff's credit scores, credit reports, credit worthiness, credit history and reputation.

57. As a result of the damage to Plaintiff's credit caused by Defendant, Plaintiff has refrained from applying for credit including a home loan due to the derogatory credit history, delinquent trade lines, and presence of collections accounts and public records appearing on Plaintiff's consumer credit reports as a result of Defendant's conduct, unlawful and unfair business practices, and Defendant's breaches of its own contract.

58. Through this conduct, Defendant violated 15 U.S.C. § 1679b(a)(3) by making an untrue or misleading representation regarding its credit repair and debt settlement services.

59. Through this conduct, Defendant violated 15 U.S.C. § 1679b(a)(4) by engaging directly or indirectly in any act, practice, or course of business that constitutes or results in the commission or attempt to commit a fraud or deception on a person in connection with the sale of Defendant's credit repair and debt settlement services.

60. Through this conduct, Defendant violated 15 U.S.C. § 1679b(b) by charging or receiving payment in advance for the performance of services the Defendant had agreed to perform for Plaintiff before the service was fully performed.

61. In addition, by advertising, offering, or selling loans that contain unlawful terms and are illegal under Washington and/or federal law, Defendant made a fraudulent misrepresentation.

62. As a result of its unfair business practices, Defendant gained and continues to gain a competitive advantage over competitors who comply with the Credit Repair Organizations Act, 15 U.S.C. §§ 1679, *et seq*. ("CROA"), thereby receiving more money from, and causing injury to, unsuspecting consumers

and the general public.

63. Alternatively, Defendant engaged in a pattern of "unfair" business practices that violate the wording and intent of the abovementioned statute/s by engaging in practices that are immoral, unethical, oppressive or unscrupulous, and against public policy, the utility of such conduct, if any, being far outweighed by the harm done to consumers.

64. Through this conduct, Defendant violated the Washington Consumer Protections Act, RCW 19.86 et seq.

65. Defendant's conduct is likely to deceive the public who are likely to believe that Defendant may contractually charge a retainer fee, service fee, or pressure consumers to pay DAN a monthly fee for Defendant's purported debt consolidation, debt resolution, and credit repair services.

66. As a result of each and every violation of the Washington Consumer Protection Act, Plaintiff is entitled to damages. Defendant should be required to make restitution of such charges and fees acquired by Defendant, including interest on the sum from the dates of payment plus interest.

67. Defendant's advertising is unfair, deceptive, untrue or misleading in that consumers are led to believe that they are working with a company that actually provides debt consolidation, debt resolution, and credit repair services.

68. Consumers are further misled into believing that Defendant's program will result in a net benefit to their credit score, report, or rating as long as they fully participate and make the payments as scheduled by Defendant.

69. Plaintiff, reasonable consumers, and the public would likely be, and, in fact were, deceived and misled by Defendant's advertising that participating in its program for the duration calculated by Defendant would reduce Plaintiff' debt and improve Plaintiff' long-term credit score, credit report, or credit rating.

70. Defendant's unlawful, unfair, and fraudulent business practices and unfair,

deceptive, untrue or misleading advertising present a continuing threat to the public because Defendant continues to engage in unlawful, unfair, and deceptive conduct that harms consumers.

71. Defendant engaged in these unlawful, unfair, and fraudulent business practices motivated solely by Defendant's self-interest with the primary purpose of collecting monies from Plaintiff, thereby unjustly enriching Defendant.

72. Such acts and omissions by Defendant are unlawful and/or unfair and/or fraudulent.

73. As a direct and proximate result of the aforementioned acts and representations described above and herein, Defendant received and continues to receive an unfair competitive advantage and unearned commercial benefits at the expense of its competitors and the public.

74. As a direct and proximate result of Defendant's unlawful, unfair and fraudulent conduct described herein, Defendant has been and will continue to be unjustly enriched by the receipt of ill-gotten gains from customers like Plaintiff, who unwittingly provided money to Defendant based on Defendant's misleading representations. This conduct caused Plaintiff damages and requires, among other things, restitution and injunctive relief to remedy and prevent further harm. Plaintiff seeks disgorgement of ill-gotten profits, statutory damages, punitive damages, interest, injunctive relief, and attorney's fees and costs.

## CAUSES OF ACTION CLAIMED BY PLAINTIFF

### COUNT I

### VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

### 15 U.S.C. §§ 1679, *ET SEQ.* (CROA)

75. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

76. The foregoing acts and omissions constitute numerous and multiple violations of the CROA.

77. Defendant is a credit repair organization ("CRO") because it counsels and advises consumers of the benefits and drawbacks of different types of credit repair services and then instructs consumers to take a course of action – to cease making any payments on accounts, cease any communication with creditors or collectors, refrain from closing any accounts, and forwarded any and all communications from creditors or collectors to Defendant  – all in exchange for the promise of elimination of debt, improvement to Plaintiff's credit rating, credit history, and/or credit score.

78. Moreover, Defendant convinces consumers to enroll in its program based on the misleading representation that its program is superior to other services, despite the immediate negative credit implications, because consumers will be able to reduce their debt load and make debt uncollectible, ultimately resulting in elimination of debt and improvement of their credit worthiness.

79. As a result of each and every violation of the CROA, Plaintiff demands that Defendant be ordered to pay Plaintiff actual damages, punitive damages, and attorney's fees pursuant to 15 U.S.C. § 1679g.

### COUNT II

**VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT**

**CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.* (UCL)**

80. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

81. The foregoing acts and omissions constitute numerous and multiple violations of the Washington Consumer Protection Act, RCW 19.86 et seq. ("CPA").

82. The CPA provides that unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

83.  By and through Defendant's conduct alleged herein, Defendant engaged in conduct which constitutes unlawful, unfair, and/or fraudulent business practices, and unfair, deceptive, untrue or misleading advertising prohibited by the CPA.

### A.    "Unfair" Prong

84.  Beginning at a date currently unknown and continuing up through the time of this Complaint, Defendant has committed acts of unfair competition that are prohibited by the CPA and the Credit Repair Organizations Act ("CROA").

85.  Through this conduct, Defendant violated the CPA and engaged in business practices that are unfair because Defendant misrepresented and did not fully disclose material information regarding its program to Plaintiff.

86.  As a result of its unfair business practices, Defendant gains a competitive advantage over competitors who comply with the Credit Repair Organizations Act ("CROA"), thereby receiving more money from, and causing injury to, unsuspecting consumers like Plaintiff.

87.  Alternatively, Defendant engaged in a pattern of "unfair" business practices that violate the wording and intent of the abovementioned statute/s by engaging in practices that are immoral, unethical, oppressive or unscrupulous, and against public policy, the utility of such conduct, if any, being far outweighed by the harm done to consumers like Plaintiff.

### B. Deceptive Acts or Practices Prong

88.  Defendant's advertising is unfair, deceptive, untrue or misleading in that consumers are led to believe that by participating in the DAN program and making payments for the duration calculated by Defendant, Plaintiff would in return receive reduced or eliminated debt.

89.  Consumers are further misled into believing that Defendant's program will result in a net benefit to their credit score, report, or rating as long as they fully participate and make the payments as calculated and scheduled by

1    Defendant.

2    90.  Plaintiff, reasonable consumers, and the public would likely be, and, in fact

3         were, deceived and misled by Defendant's advertising that participating in its

4         program for the duration calculated by Defendant would reduce Plaintiff's

5         debt and improve Plaintiff's long-term credit scores, credit reports, or credit

6         ratings.

7    91.  Defendant's unlawful, unfair, and fraudulent business practices and unfair,

8         deceptive, untrue or misleading advertising present a continuing threat to the

9         public because Defendant continues to engage in unlawful, unfair, and

10        deceptive conduct that harms consumers.

11   92.  Defendant engaged in these unlawful, unfair, and deceptive business practices

12        motivated solely by Defendant's self-interest with the primary purpose of

13        collecting unlawful and unauthorized monies from Plaintiff, thereby unjustly

14        enriching Defendant.

15   93.  Such acts and omissions by Defendant are unlawful and/or unfair and/or

16        fraudulent and constitute a violation of the CPA.

17   94.  As  a  direct  and  proximate  result  of  the  aforementioned  acts  and

18        representations described above and herein, Defendant received and continues

19        to receive an unfair competitive advantage and unearned commercial benefits

20        at the expense of its competitors and the public.

21   95.  Through this conduct, Defendant violated the CPA by engaging in business

22        practices that are deceptive.

23   96.  As a direct and proximate result of Defendant's unlawful, unfair and

24        fraudulent conduct described herein, Defendant has been and will continue to

25        be unjustly enriched by the receipt of ill-gotten gains from customers,

26        including Plaintiff, who unwittingly provided money to Defendant based on

27        Defendant's misleading representations. In addition, Plaintiff has been misled

28        by Defendant and suffered emotional and financial distress as a result of

Defendant's conduct.

97. Plaintiff suffered an "injury in fact" because Plaintiff' money was taken by Defendant as a result of Defendant's unlawful and unfair conduct and Defendant's false and misleading representations.

## COUNT III

### BREACH OF CONTRACT

98. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

99. Defendant presented Plaintiff with the agreement for the DAN Program, entitled "Consumer Tender of Offer and Debt Assumption Agreement" and the parties entered into the contract for Defendant's debt relief and credit repair services on or about April 7, 2016.

100. Plaintiff fulfilled Plaintiff's obligations pursuant to the contract.

101. Defendant breached the parties' contract by failing to perform and provide services as promised according to the terms of the contract.

102. Defendant breached the contract by failing to make the required monthly payments to Plaintiff's creditors related to the accounts enrolled with DAN under the agreement.

103. As a result of Defendant's failure to make payments on Plaintiff's accounts enrolled in the DAN program, Plaintiff's creditors have charged off the accounts, causing the accounts to go to debt collectors and collections attorneys, and Plaintiff's credit scores, credit reports, credit worthiness, and credit reputation has been damaged as a result of Defendant's conduct.

104. Defendant breached the contract by failing to honor Defendant's "100% Guarantee Policy" provided in the contract.

105. Defendant breached the contract by failing to refund Plaintiff's payments to Defendant when Defendant knew, or should have known, that no new contracts had been entered with the creditors and Plaintiff, as promised in the

contract and under Defendant's "100% Guarantee Policy."

106. Defendant breached the contract by failing to provide Plaintiff with "a local attorney for representation and defense" for the duration of the lawsuit when Plaintiff was sued for a debt related to an account entrusted to Defendant in the contract as a result of Defendant's failure to modify Plaintiff's agreements with Plaintiff's creditors and Defendant's failure to make payments due on Plaintiff's accounts.

107. Defendant breached the contract by failing to provide Plaintiff with access to contact with DAN representatives for information related to Plaintiff's accounts enrolled in Defendant's DAN Program, or information related to Defendant's program and services.

108. Defendant's breach of the "Consumer Tender of Offer and Debt Assumption Agreement" caused damages to Plaintiff, including but not limited to, loss of money, increased debt, damage to Plaintiff's credit score, credit reports, credit worthiness, and reputation, including the collection lawsuit filed against Plaintiff as a result of Defendant's breach of the duties Defendant owed Plaintiff under the parties' contract and Plaintiff's reliance on Defendant to provide services paid for and promised by the contract.

109. As a direct and proximate result of Defendant's conduct and numerous breaches of the parties' contractual agreement, Plaintiff has been damaged in an amount to be determined at trial, and is entitled to compensatory damages, plus interest, costs, and other such monetary or equitable relief as may be deemed proper by the Court.

## COUNT IV

### NEGLIGENCE

110. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

111. Defendant owed various duties to Plaintiff with regard to its business practices

pursuant to the CROA and the CPA, and the DAN contract presented by Defendant to Plaintiff and then entered into by the parties.

112. Defendant breached its duties owed to Plaintiff by engaging in the acts described herein, each in violation of the statutes at issue herein, and contrary to the representations, promises, and guarantees provided by Defendant in the parties' contract.

113. Plaintiff asserts that Defendant is the actual and legal cause of Plaintiff's damages.

114. Plaintiff believes and thereon alleges that as a proximate result of Defendant's negligence, Plaintiff has suffered injury in the form of loss of money unlawfully and unfairly acquired by Defendant, increased debt, damage to Plaintiff's credit score, credit reports, credit worthiness, and reputation, including the lawsuit filed against Plaintiff as a result of Defendant's breach of the parties' contract and Plaintiff's reliance on Defendant to provide services paid for and promised by the contract.

115. Due to the egregious violations alleged herein, Plaintiff asserts that Defendant breached Defendant's duties in an oppressive, malicious, despicable, gross, and wantonly negligent manner. As such, said conduct establishes Defendant's conscious disregard for the rights of Plaintiff, and entitles Plaintiff to recover punitive damages from Defendant.

**COUNT V**

**NEGLIGENT MISREPRESENTATION**

116. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

117. Defendant intentionally and willfully misrepresented the quality of the services offered to Plaintiff and benefits that would be realized by Plaintiff.

118. Said representations were material misrepresentations.

119. At all relevant times, Defendant made the false and misleading representations

to Plaintiff with full knowledge of their falsity.

120. Plaintiff entered into a contract with Defendant based solely on the representations made by Defendant. At all relevant times, Defendant intended that Plaintiff rely on the representations made by Defendant.

121. Plaintiff did in fact rely on the misrepresentations by Defendant. causing Plaintiff harm.

**COUNT VI**

**INTENTIONAL MISREPRESENTATION**

122. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

123. Defendant intentionally and willfully misrepresented quality of the services offered and benefits that would be realized by Plaintiff.

124. Said representations were material misrepresentations.

125. At all relevant times, Defendant made false representations to Plaintiff with full knowledge of its falsity.

126. At all relevant times Defendant intended that Plaintiff rely on the representations made by Defendant.

127. Plaintiff did in fact rely on the misrepresentations by Defendant, causing Plaintiff harm.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendant providing the following relief to Plaintiff:

- Declaratory relief finding Defendant's conduct alleged herein be adjudged and decreed to violate the consumer protection statutes and claims asserted herein;

- That Defendant be enjoined from continuing the wrongful conduct alleged herein and required to comply with all applicable laws;

- That Defendant be disgorged of all monies wrongfully acquired and all ill-

gotten profits obtained by Defendant as a result of the conduct and practices alleged herein, allowing Plaintiff to recover amounts by which Defendant has been unjustly enriched;

- As a result of each and every violation of the CROA, an award of actual damages, the greater of (1) the amount of any actual damages sustained by Plaintiff or (2) any amount paid by Plaintiff to Defendant, pursuant to 15 U.S.C. § 1679g(a)(1)(A)-(B);

- An award of punitive damages, in such amount as the Court may allow, pursuant to 15 U.S.C. § 1679g(a)(2)(A);

- An award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1679g(a)(3);

- An award of statutory damages as provided by applicable law;

- An award of actual damages in an amount to be determined at trial;

- An award of general damages in an amount to be determined at trial;

- An award of compensatory damages in an amount to be determined at trial;

- An award of special damages in an amount to be determined at trial;

- An award of punitive damages in amount to be determined at trial;

- An award of Treble Damages pursuant to the CPA;

- An award granting Plaintiff' attorneys' fees and costs of suit incurred herein;

- Pre-judgment interest and post-judgment interest as provided by law; and

- Any and all other relief the Court deems just and proper.

///
///
///
///
///
///

**TRIAL BY JURY**

128. Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and hereby demands, a trial by jury.

Dated: January 9, 2020                    Respectfully submitted,

                                            **KAZEROUNI LAW GROUP, APC**

By: _s/ Ryan L. McBride_
Ryan L. McBride, Esq. (50751)
ryan@kazlg.com
**Kazerouni Law Group, APC**
2633 E. Indian School Road, Ste. 460
Phoenix, AZ 85016
Telephone: (800) 400-6808
Facsimile:  (800) 520-5523